# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

KANAWAY SEAFOODS, INC., et al.,

                Plaintiffs,

      v.

PACIFIC PREDATOR, et al.

                Defendants.

Case No. 3:22-cv-00027-JMK-KFR

## FINDINGS AND RECOMMENDATIONS ON
## MOTIONS TO DISMISS UNDER 12(b)(1)

The Court recommends Defendants' Motions to Dismiss at Dockets 66 and 76, each seeking dismissal of portions of Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) be denied. Plaintiffs' Amended Complaint contains allegations that on their face are sufficient to invoke federal jurisdiction. Specifically, as it relates to money advanced by Plaintiffs for Defendants' purchase of three limited entry fishing permits, maritime jurisdiction under 46 U.S.C. § 31342 exists as these permits can properly be considered necessaries essential for the operation of Defendants commercial fishing enterprise. In addition, Plaintiffs' action for possession of the Pacific Predator is a proper basis for jurisdiction pursuant to Supplemental Admiralty Rule D.

## I.    Relevant Proffered Facts and Allegations[1]

Starting in 2019, Defendants Dana and Bryan Howey entered into a series of agreements with Plaintiffs Liberty Packing, LLC ("Liberty"), and Kanaway Seafoods Inc. ("Kanaway"), doing business as Alaska General Seafoods ("AGS"). On or about

---

[1] The Relevant Proffered Facts are limited to those facts necessary to decide the motions before the Court. The Court does not intend for the Relevant Proffered Facts to constitute binding findings of fact should this matter proceed to trial.

April 17, 2019, Defendants Dana and Bryan Howey entered into a Loan and Security Agreement with Liberty ("the Loan Agreement").[2] Under the Loan Agreement, Liberty loaned Defendants $800,000 to pay off Defendants' outstanding loan to a third party.[3] In exchange for this loan from Liberty, Defendants Bryan and Dana Howey agreed to enter into a Fishing Agreement with AGS to deliver and sell seafood products to AGS for a fixed period.[4] The Liberty loan was further documented by a Promissory Note dated April 17, 2019, reciting the applicable loan terms ("the Liberty Note").[5]

On or about June 30, 2019, Defendant Bryan Howey entered into a Promissory Note with AGS for $23,949.32 ("the AGS Note"), documenting a loan from AGS to Howey in that amount.[6] On or about July 12, 2019, Howey purchased a limited entry fishing permit for the 2019 season in the amount of the AGS Note.[7] Howey could repay the loan personally no later than September 30, 2019, or repayment could be made by that date through the "deliver[y of] sufficient product to [AGS]."[8]

In addition to the AGS Note, AGS loaned Defendant Bryan Howey additional sums on an "open account" between 2019 and 2021 to be repaid under AGS's standard terms and conditions, which included interest on the open amounts at 10% per annum ("AGS Open Account Loan"). These funds were loaned on the credit of Defendant Howeys' fishing vessel, the Pacific Predator ("the Vessel"), and some of these funds were used by Defendants for necessaries for the Vessel, including vessel permits for the 2020 and 2021 fishing seasons.[9]

---

[2] Doc 64-1.
[3] Doc. 64 at 3.
[4] *Id.*
[5] *Id.* at 4.
[6] *Id.* at 5.
[7] Doc. 64-3 at 1.
[8] *Id.*
[9] Doc. 64 at 5; *see also* Doc. 64-3 at 3 and 5.

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*

As to each of these loans, Plaintiffs' Amended Complaint alleges that Defendants have failed to comply with their terms. According to Plaintiffs, Defendants Bryan and Dana Howey, individually and through their company AWE, defaulted on the obligations in the Liberty Loan Agreement and Liberty Note by failing to make agreed principal and interest payments, and failing to register the Vessel in Washington and provide documentation of that registration to Liberty.[10] Plaintiffs contend that these, and other acts and omissions of Defendants, constitute default under both the Loan Agreement and Note.[11] Plaintiffs state that as of January 14, 2022, the principal due on the Liberty Loan was $746,666.67 and the accrued interest as of February 1, 2022, was $113,166.62, with interest continuing to accrue at a rate of $368.22 per day.[12]

With regard to the AGS matters, Plaintiffs allege that Defendant Bryan Howey never repaid the AGS Note nor fully repaid the AGS Open Account Loan. Plaintiffs claim that Howey failed to repay the sums loaned to him under the AGS Note by September 30, 2019, and that the $23,949.32 balance on the note remains unpaid with interest continuing to accrue.[13] In addition, Plaintiffs state that by making deliveries of fish to AGS, Howey repaid a total of $326,644.13 that had been advanced to him by AGS.[14] The result Plaintiffs allege is that the unpaid balance on these two AGS loans stood at $115,953.48, with interest accruing.[15] Plaintiffs further state that AGS advanced additional sums after 2021.[16]

---

[10] Doc. 64 at 5.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 7. Plaintiffs state that "AGS applied these payments to interest first, then to unsecured amounts advanced, and then to sums advanced for necessaries under both the AGS Note and AGS Open Account Loan." Defendants' motion to dismiss at Docket 66 challenges how payments were applied by AGS. The Court views this issue as one for the trier of fact to decide at trial, not an issue for this Court to decide in a motion to dismiss.

[15] *Id.*

[16] *Id.*

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 3 of 22

According to Plaintiffs' Amended Complaint, Plaintiffs Kanaway and AGS are affiliated corporations organized under the laws of the State of Delaware.[17] Plaintiff Liberty is a limited liability company operating under the laws of the State of Washington.[18] Defendants Bryan and Dana Howey are residents of the State of Alaska.[19] Defendant AWE is a limited liability company organized under the laws of the State of Alaska, and Defendant Bryan Howey is the governing person and authorized agent of AWE.[20] At all times material herein, *in rem* Defendant Vessel was registered in the State of Alaska and is within the District of Alaska during the pendency of this action and subject to the jurisdiction of this Court.[21] The Vessel is owned by Defendant Bryan Howey and/or Defendant AWE.[22]

Plaintiffs' Amended Complaint raises three causes of action. In their first cause of action, Plaintiffs allege a breach of contract and promissory note. Specifically, Plaintiffs allege that Defendants Bryan and Dana Howey breached the terms of the Liberty Loan and Liberty Note by failing to make principal and interest payments on the loan and note, and by failing to register the vessel in Washington State and provide documentation of that registration.[23] Plaintiffs' second cause of action seeks to foreclose on their maritime and state lien rights as a result of Defendants' failure to repay money advanced to Defendants under the AGS Note and AGS Open Account Loan for "the maintenance and operation of the [V]essel as necessaries."[24] Plaintiffs also seek to foreclose on the Vessel pursuant to Supplemental Admiralty Rule D as a result of Defendants' alleged default on the

---

[17] *Id.* at 2.
[18] *Id.*
[19] *Id.* at 3.
[20] *Id.*
[21] *Id.* at 2-3.
[22] *Id.*
[23] *Id.* at 7-8.
[24] *Id.* at 9.

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case No. 3:22-cv-00027-SLG-KFR
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 4 of 22

Liberty Loan.[25] Plaintiffs' third cause of action alleges corporate disregard, and seeks to have the Court disregard AWE as an entity.[26]

Plaintiffs seek declaratory and monetary judgment against Defendants over the $75,000 threshold for diversity jurisdiction.[27] On the face of the amended complaint, Plaintiffs assert jurisdiction under 46 U.S.C. § 31322, § 31325, and § 31342; under Supplemental Admiralty Rules C and D; and within the meaning of Fed. R. Civ. P. 9(h). Plaintiffs further state that venue is proper because the Court has personal jurisdiction over the parties to this matter since the Vessel is currently located in this District, and Defendants are located and do business in the State of Alaska.

## II. Procedural History and Motions Presented

On February 23, 2022, Plaintiffs filed a complaint, *in rem* and *in personam*, against Defendants for breach of contract and promissory note, corporate disregard, to foreclose maritime liens, and for a warrant to arrest the Vessel, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter "Admiralty Rule or Rules").[28]

This Court issued a warrant for the arrest of the Vessel on March 16, 2022.[29] Upon the execution of the arrest warrant, Defendants filed a motion for a hearing to either vacate the arrest pursuant to Admiralty Rule E(4)(f), or set the amount of a special bond to secure the release of the Vessel under Admiralty Rule E(4)-(5).[30] The Court heard argument on the motion on May 3, 2022[31] and directed additional briefing on the matter, which the parties provided.

On July 29, 2022, the Court denied the motion to vacate the arrest, and granted

---

[25] *Id.*
[26] *Id.* at 10.
[27] *Id.*
[28] Docs. 1 and 3.
[29] Doc. 7.
[30] Doc. 15.
[31] Doc. 28.

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 5 of 22
Page 5 of 22

the motion to set a special bond to secure the release of the Vessel in the amount of $148,500. In that order, the Court found that maritime liens existed, thus creating subject matter jurisdiction over Plaintiffs' claims. The Court declined to issue a ruling on the strength of Defendants' argument that a "maritime lien cannot attach to a limited entry permit," and whether $46,964.32 of the unpaid balance, plus interest, must be discounted from the bond amount.[32]

Plaintiffs filed an Amended Complaint on September 7, 2022.[33]

On September 25, 2022, Defendants filed a motion to dismiss a portion of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of admiralty jurisdiction (hereinafter "Fed. R. Civ. P." or "Rule"). The portion of the Amended Complaint Defendants sought to have dismissed involved a claim relating to money loaned by AGS to Defendants that was used by Defendants to pay for the temporary emergency transfer of Alaska State limited entry fishing permits.[34] The motion also sought to reduce the Court's previously-ordered special bond under Admiralty Rule E(6) by the amount of the money advanced for the permits.[35] Plaintiffs responded in opposition, and Defendants replied.[36]

Shortly after, Defendants filed a second motion to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim regarding the AGS Note and for an award of attorney's fees and costs, along with another Admiralty Rule E(6) motion to reduce security and costs, to which Plaintiffs responded in opposition and Defendants replied.[37]

Defendants then filed a third motion to dismiss the Amended Complaint under Rule 12(b)(1) for lack of admiralty jurisdiction regarding Rule D "Petitory Action"

---

[32] Doc. 52.
[33] Doc. 64. The amended complaint included an itemized accounting of the losses alleged by Plaintiffs. All of the original claims remained unchanged.
[34] Doc. 66.
[35] *Id.*
[36] Docs. 77 and 80.
[37] Docs. 71, 78, 81.

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case No. 3:22-cv-00027-SLG-KFR
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 6 of 22

and under the Preferred Ship Mortgage Act. Plaintiffs opposed the motion to dismiss.[38]

In this Order, the Court considers all filings related to both motions to dismiss the Amended Complaint under Rule 12(b)(1). Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) will be addressed in a separate order.

## III. Applicable Law

### a. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."[39] Congress has statutorily implemented the federal courts' original subject matter jurisdiction under Article III of the Constitution by categorizing all cases arising under the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331; and cases involving citizens of diverse states under 28 U.S.C. § 1332. In addition, 28 U.S.C. § 1333 grants federal district courts the power to entertain "[a]ny civil case of admiralty or maritime jurisdiction." Supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367 may also exist when those claims are "so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III[.]"[40] "It is to be presumed that a cause lies outside of federal courts' limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[41]

The standard for determining whether a plaintiff has asserted a valid basis for admiralty jurisdiction is the "prima facie standard," rather than the more demanding

---

[38] Docs. 76, 82, 83.

[39] *Gunn v. Minton*, 568 U.S. 251 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted)).

[40] *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 206 (5th Cir. 2018) (internal citations omitted).

[41] *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1091 (9th Cir. 2014) (citing *Kokkonen*, 511 U.S. at 377).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 7 of 22

"fair probability" or "reasonable grounds" standards.[42] The "inquiry focuses on whether the plaintiff has [pled] a claim cognizable in admiralty."[43] It is well settled that the plaintiff bears the initial burden of pleading in his complaint the appropriate jurisdictional facts to establish both the court's jurisdiction over the subject matter of the action and over the parties to the action, including proper service of process.[44]

### b. Facial Challenges to Motion to Dismiss under 12(b)(1)

A court's subject matter jurisdiction may be challenged under Fed. R. Civ. P. 12(b)(1). Such challenges may be either "facial" or "factual."[45] In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[46] When opposing a facial attack on subject matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings.[47] In deciding a facial Rule 12(b)(1) motion, the court must assume the plaintiff's allegations in the complaint to be true and draw all reasonable inferences in his favor.[48] By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[49]

## IV. Analysis

### a. Motion to Dismiss for Lack of Subject Matter Jurisdiction Money Advanced by AGS for Acquisition of Limited Entry Permits and for Reduction in Bond at Docket 66

---

[42] *Padre Shipping, Inc. v. Yong He Shipping,* 553 F.Supp.2d 328, 331-32 (S.D.N.Y. 2008).

[43] *Ronda Ship Mgmt. v. Doha Asian Games Org. Comm.,* 511 F.Supp.2d 399, 404 (S.D.N.Y. 2007).

[44] 102 A.L.R. Fed. 811 (originally published in 1991).

[45] *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004).

[46] *Id.* (quoting *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004)).

[47] *Wolfe,* 392 F.3d at 362; *see Doe v. Holy See,* 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint).

[48] *Wolfe,* 392 F.3d at 362 (citations omitted).

[49] *Id.* at 362 (quoting *Safe Air,* 373 F.3d at 1039).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 8 of 22

Defendants make a facial challenge to a portion of Plaintiffs' Amended Complaint, claiming that the money advanced by AGS that was used by Defendants to obtain three limited entry salmon seining permits cannot form a basis for federal jurisdiction, because such transactions do not give rise to maritime liens.[50] Defendants argue that such transactions are precluded by Alaska law,[51] and that limited entry permits are not "necessaries" as required for a maritime lien under maritime law.[52] In addition to dismissal for lack of subject matter jurisdiction of those portions of Plaintiffs' Amended Complaint relating to the monies advanced to purchase the limited entry permits, which Defendants claim totaled approximately $46,964.32, Plaintiffs also seek a reduction in the Vessel's bond by that amount.[53]

In their opposition Plaintiffs raise several arguments. First, Plaintiffs state that Defendants' motion to dismiss improperly seeks reconsideration of this Court's prior decision in which the Court ruled that items purchased by Defendants with money advanced by AGS, which included the limited entry fishing permits, were properly considered "necessaries."[54] Second, Plaintiffs argue that AGS' debt and lien claims against the Vessel do not implicate Alaska law or regulations regarding fishing permits. Moreover, Plaintiffs argue that Alaska law cannot alter federal jurisdiction, which is properly found in this case given that the permits fall within the "'broad meaning' of necessaries" under federal law for which maritime jurisdiction properly exists.[55]

Finally, Plaintiffs submit that because admiralty jurisdiction is proper over all claims within their Amended Complaint, including those related to money used to purchase the limited entry permit, there is no justification to reduce the bond

---

[50] Doc. 66 at 2.
[51] *Id.* at 10-13.
[52] *Id.* at 13-14.
[53] *Id.* at 2, 16-18.
[54] Doc. 77 at 5-6 (citing to Court's Order Denying Motion to Vacate at Doc. 52).
[55] *Id.* at 7-11 (quoting at pages 7 and 8 *Farwest Steel Corp. v. Barge Sea-Span*, 769 F.2d 620, 623 (9th Cir. 1985).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*

Page 8 of 87

amount set by the Court.[56]  Furthermore, even if the amounts used to purchase the limited entry permits was improperly included, reduction of the bond amount is unwarranted as the currently set bond amount is reasonable because it is still less than what would be permitted under a recalculated total.

The Court views the issues Defendants raise of whether subject matter and admiralty jurisdiction exist in this case, whether the limited entry permits give rise to admiralty jurisdiction, and whether the limited entry permits give rise to a maritime lien as three related, but distinct issues. Ultimately, consistent with the Court's previous order at Docket 52 and the District Court's order regarding a similar limited entry permit in *Finney v. Howey,*[57] the Court finds that subject matter and admiralty jurisdiction exist over all claims as it relates to the allegations in Plaintiffs' Amended Complaint relating to money provided by AGS that was used by Defendants to purchase limited entry permits.  The Court recommends denial of Defendants' Rule 12(b)(1) motion at Docket 66.

### i. A Maritime Lien Exists Giving the Court Jurisdiction.

Federal courts may exercise their maritime jurisdiction granted by 28 U.S.C. § 1333 if an action is based on a maritime lien pursuant to the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31342, or if an action is based on a maritime contract.[58]  As stated in the Court's order at Docket 52, for purposes of determining when a maritime lien exists, and therefore federal maritime jurisdiction, the relevant portion of the statute reads:

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner, (1) has a maritime lien on the vessel; (2) may bring a civil action *in rem* to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the

---

[56] *Id.* at 11-13.

[57] *Finney v. Howey*, 3:20-cv-00289-SLG-FKR, Doc. 31 (D. Alaska, Dec. 19, 2022).

[58] *See Farwest Steel Corp.,* 769 F.2d at 620 (A maritime contract may be enforced in federal court without any other basis of subject matter jurisdiction). *See Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 23 (2004) (a federal action can "be sustained under the admiralty jurisdiction by virtue of the maritime contracts involved.").

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 10 of 22

vessel.[59]

A necessary is "any item which is reasonably needed for a venture in which the ship is engaged"[60] and should be given "broad meaning."[61] Necessaries can include amounts paid for "goods, services and intangibles that a careful and provident owner would provide to enable a vessel to continue to perform well the functions for which she has been designed and engaged."[62]

In *Ventura Packers, Inc. v. Kathleen*, the Ninth Circuit explained that CIMLA supplied a basis for maritime jurisdiction, and that the Plaintiff may show that it has a maritime necessaries lien under certain conditions.

> We, therefore, follow the Supreme Court's lead in *Tallentire* and conclude that [CIMLA] supplies a basis for admiralty jurisdiction independent from those bases available at common law. In so interpreting [CIMLA], we neither add nor subtract from what Congress passed into law. Specifically, we hold [the plaintiff] must demonstrate that: (1) it provided necessaries; (2) to a vessel; (3) by order of the owner or a person authorized by the owner. ... If [the Plaintiff] demonstrates these elements, it may invoke the admiralty jurisdiction of the federal courts to enforce a necessaries lien *in rem*."[63]

In this case, the Court finds that the Amended Complaint does allege sufficient facts establishing maritime jurisdiction. As stated in the Amended Complaint, whose allegations the Court must consider true in light of the facial attack on jurisdiction made by Defendants in their motion to dismiss, "[t]he funds loaned to [Defendant] Howey as documented by the AGS Note were loaned on the credit of the Vessel and intended to be used for necessaries for the Vessel, including but not limited to a vessel permit lease."[64] Furthermore, as it relates to amounts advanced by AGS under

---

[59] 46 U.S.C. § 31342(a).

[60] *Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.*, 808 F.2d 697, 699 (9th Cir. 1987); *see also Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir. 1986) (interpreting necessaries as anything that facilitates or enables a vessel to perform its mission or occupation).

[61] *Farwest Steel*, 769 F.2d at 623.

[62] *Zitano v. F/V Diamond Gir*l, 963 F.Supp. 109, 112 (D.R.I. 1997) (citing *Farrell Ocean Services, Inc. v. United States*, 681 F.2d 91, 92–93 (1st Cir. 1982); *Payne v. S.S. Tropic Breeze*, 423 F.2d 236, 241 (1st Cir. 1970)).

[63] *Ventura Packers*, 305 F.3d at 919.

[64] Doc. 64 at 5.

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case No. 3:22-cv-00027-SLG-KFR
Page 11 of 22

the AGS Open Account Loan, Plaintiffs' amended complaint similarly alleges that some of this money was used for the purchase of "necessaries."[65] Plaintiffs' accounting of funds advanced under the AGS Open Account loan documents the acquisition of the permit acquired with the AGS Note,[66] as well as two additional limited entry permits using the AGS Open Account Loan.[67]

Alaska limited entry permits are informed by the Limited Entry Act (LEA), which was enacted in 1973 after a rising crisis brought on by poor salmon returns, declining fishing incomes, and a rising number of nonresident fishermen.[68] Alaska's LEA was developed to "keep fishing rights in the hands of Alaskans dependent on fisheries, especially rural residents with limited economic opportunity."[69] The LEA was designed to "promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry of participants and vessels into the commercial fisheries in the public interest and without unjust discrimination."[70]

In its Order Denying Motion to Vacate Arrest and Setting Bond, this Court previously analyzed the standards and elements required to determine that Plaintiffs

---

[65] *Id.* at 6-7.

[66] *See* Doc. 64-4 at 1 ("ET SE Seine Permit Lease – Anthony -George" in the amount of $23,949.32).

[67] *Id.* at 3 ("Copper River Boats/Permit S01E-56824E/B. Howey" in the amount of $9,965), and 5 ("ACH to Dock Street Brocker/SE Permit Lease/B Howey" in the amount of $13,050). In determining whether a complaint states a claim for relief, a court may consider facts contained in documents attached to the complaint. *See Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). Defendants' motion to dismiss states that "each year [Defendants] fished for AGS under the Fishing Agreement, AGS would advance the owner/transferor the purchase price of the [permit]."

[68] Frank Homan, "30 Years of Limited Entry," chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://seagrant.uaf.edu/events/fish-com2/ppts/homan-limitedentry.pdf; "A Bristol Bay Fisheries Policy Retrospective," The Nature Conservancy, September 11, 2021, https://www.nature.org/en-us/newsroom/alaska-bristol-bay fisheries-righting-the-hip/#:~:text=A%20key%20objective%20of%20Alaska's,residents%20with%20limited%2 0economic%20opportunity.

[69] *Id.*

[70] AK ST § 16.43.010(a).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*

adequately showed a fair or reasonable probability that it has a maritime lien against the Vessel and that, in accordance with the Rule of Advances, necessaries were advanced.[71]  There is no basis to disturb the Court's prior findings on this issue, nor its conclusion that the money advanced by AGS to Defendants was for the purpose of acquiring necessaries for the successful operation of the Vessel.  Among those necessary items were the three limited entry permits at issue in this motion, items not only "reasonably needed" for the activities in which the Vessel was engaged, but essential to its success.[72]

Defendants write in their own motion to dismiss that to engage in the Southeast Alaska fishery, the location Defendants sought to fish in order to meet their obligations to Plaintiffs, "*required* a salmon seine limited entry permit issued by the Alaska Commercial Fisheries Entry Commission."[73]  Because of this requirement, AGS's advancement of money to purchase the permits was no less necessary to the success of the fishing operation at issue in this case than money advanced to purchase fuel to power the Vessel's run to the fishery, or nets with which to catch fish upon its arrival at its intended location. Like other intangibles such as insurance, the permit was "an asset that [kept] the vessel 'active' and [was] necessary to the 'continued operation' of the vessel."[74]  By alleging facts in the amended complaint that the funds from the AGS Note and AGS Open Account Loan were provided to Defendants for the purpose of acquiring necessaries, which

---

[71] Doc. 52; Doc. 77 at 4-5.

[72] *See Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, (11th Cir. 1996) ("Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged.")

[73] Doc. 66 at 4 (emphasis added).

[74] *Zitano*, 963 F.Supp at 112; *see also First Bank v. Exodus*, 598 F.Supp.3d 1077 (W.D. Wash. April 8, 2022) (noting there is "no general objection to treating an intangible as an appurtenance," and when considering whether a fishing permit qualified as an appurtenance, noting that it was "the rights themselves" rather than the physical permit itself that determined the market value and creditworthiness of the vessel, as much as its engine, physical dimensions, and navigation equipment) (quoting *Gowen, Inc. v. F/V Quality One*, 244 F.3d 64, 67-68 (1st Cir. 2001)).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 13 of 22

included the limited entry permits, Plaintiffs have met their burden and established a cognizable claim in admiralty under 46 U.S.C. § 31342. [75]  Subject matter jurisdiction on that basis is proper.

Defendants' reliance on Alaska state law and regulation governing the possession and transfer of limited entry permits is unavailing.  As Plaintiffs correctly argue, the issue at hand is not the assertion of a lien against the permits themselves, but rather, against the Vessel based upon the advancement of funds to the Vessel's owners that were then used to acquire the permits.  The Court does not believe that Defendants' arguments based upon state-imposed limitations on the attachment of these permits or whether or not they can be the subject of a maritime lien under Alaska laws are relevant to the issue of subject matter jurisdiction.

Moreover, Defendants' arguments relating to Alaska state law ignore federal supremacy when the issues concern federal substantive rights under admiralty law.  While "[s]tate law may supplement maritime law, [] it must yield when it interferes with harmony and uniformity, or where it would defeat reasonably settled expectations of maritime actors."[76]  Even if the Court were to assume a conflict between Alaska law and regulation and federal maritime law, federal admiralty jurisdiction would remain.

### ii. The Court's Reasoning in *Finney v. Howey* Is Not Inconsistent with Its Findings and Recommendation in this Case.

Defendants reference *Finney v. Howey*, in which this Court recommended denying a motion to vacate judgment for lack of admiralty jurisdiction regarding a contract for the transfer of a similar limited entry permit.[77]  However, the outcome in that case is not directly applicable to the issues in this motion to dismiss given the

---

[75] *Padre Shipping,* 553 F.Supp.2d at 331-32; *Ronda Ship Mgmt.,* 511 F.Supp.2d at 404.

[76] *Bank of Pacific v. F/V ZOEA*, 2017 WL 823298 at *2 (W.D. Wash. March 2, 2017) (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) and *Persson v. Scotia Prince Cruises*, Ltd., 330 F.3d 28, 32 (1st Cir. 2003)).

[77] *Finney v. Howey*, 3:20-cv-00289-SLG-FKR, Doc. 28 (D. Alaska, Nov. 14, 2022) (hereinafter "*Finney*").

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case No. 3:22-cv-00027-SLG-KFR   Page 14 of 22

arguments raised by the parties in each respective matter. In *Finney v. Howey*, Defendant Bryan Howey argued that his agreement to purchase a seasonal limited use permit from Plaintiff in exchange for $27,500 did not give rise to maritime jurisdiction because, among other arguments, Plaintiff did not and could not assert a maritime lien, nor was the transfer a maritime contract.[78] In their response, Plaintiffs did not argue that a maritime lien existed, asserting instead that admiralty jurisdiction was proper because the agreement to transfer the permit was a maritime contract.[79]

The District Court disagreed with Defendants' arguments, adopting this court's Report and Recommendation finding that the transaction at issue – the transfer of a fishing permit – was a maritime contract, and that therefore federal maritime jurisdiction was proper.[80] As Plaintiff did not argue that a maritime lien existed, neither the District Court nor the Magistrate Court addressed this issue. In addition, the Court dismissed Defendants' reliance on case law asserting that Alaska's regulation of fishing permits placed the transaction outside of admiralty jurisdiction, noting that the contract at issue did not involve any state actors, but rather, was between two private parties, and that it conflicted "neither with the admiralty jurisdiction of any court of the United States conferred by Congress, nor with any law of congress whatsoever."[81]

In this case, however, the entirety of both parties' arguments are based on whether or not an agreement to advance money to Defendants to be used for the purchase of limited entry permits from a third party was sufficient to establish a maritime lien, and therefore maritime jurisdiction. The parties do not raise, and the Court is not making any findings or recommendations as to whether or not the AGS

---

[78] *Finney* at Doc. 17.

[79] *Finney* at Doc. 19. In their opposition, Plaintiffs stated that they mistakenly asserted a maritime lien in their complaint, but did not seek to enforce any lien rights, thereby making "the factual and legal discussion on this point...irrelevant."

[80] *Finney* Doc. 31 at 2-3.

[81] *Finney* at 3-4 (D. Alaska, Dec. 19, 2022).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 15 of 22

Note and AGS Open Account Loan were maritime contracts, and whether or not maritime jurisdiction exists on that alternative basis.

The Court believes its reasoning in both cases to be consistent and that depending upon the facts of each particular case, agreements for the purchase of fishing permits can involve both necessaries, and be a contract whose "nature and subject matter" is central to the business of maritime commerce.[82] Moreover, jurisdiction on this basis is not an either or proposition as "[s]ome maritime liens [may be] based on an underlying breach of contract[.]"[83]

### iii. There Is No Basis to Reduce the Previously-Ordered Security Under Rule E(6) at Docket 66

As detailed above, the Court finds Plaintiffs' Amended Complaint properly establishes admiralty jurisdiction pursuant to 46 U.S.C. § 31342. The Court previously set a bond amount of $148,500, and in making that determination considered, but did not expressly determine as it does here, Defendants' argument that monies used for limited entry permits cannot give rise to a maritime lien.[84] However, the Court did state that even if it were to accept this argument, a bond of $148,500 would still be reasonable given that it was significantly less than the bond amount authorized under the law.[85] This fact remains true and the Court's findings and recommendations herein provides no basis to disturb its prior ruling. Accordingly, as it relates to the advances for the three limited entry permits, the Court recommends that Defendants' request to reduce its security for lack of jurisdiction be denied.

//

//

//

---

[82] *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 608 (1991).
[83] *Ventura Packers*, 305 F.3d at 920-21 (citing *Farwest Steel Corp.*, 769 F.2d at 621)).
[84] Doc. 52 at 14.
[85] *Id.* at 13-14 (citing Supplemental Admiralty & Maritime Claims Rule E(5)(a)).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 16 of 22

### b. Motion to Dismiss for Lack of Admiralty Jurisdiction re Rule D "Petitory Action" and Under Preferred Ship Mortgage Act at Docket 76

Defendants move to dismiss for lack of subject matter jurisdiction claims made in Plaintiffs' Amended Complaint relating to petitory relief, as well as claims invoking the Preferred Ship Mortgage Act under 46 U.S.C. §§ 31322 and 31325.[86] Defendants claim that Plaintiffs lack legal title to the vessel, and thus lack admiralty jurisdiction to support a claim of petitory relief under Admiralty Rule D.[87] Defendants also argue that because the Vessel is not a United States documented vessel, it does not meet the requirements under 46 U.S.C. § 31322 necessary to create admiralty jurisdiction. Similarly, Defendants argue that no admiralty jurisdiction exists under 46 U.S.C. § 31325 because there is no preferred mortgage.[88] Finally, Defendants claim that Plaintiffs failed to assert supplemental jurisdiction in their Amended Complaint.[89]

Plaintiffs respond that Admiralty Rule D applies to Plaintiff Liberty's claims, creating admiralty jurisdiction, that supplemental jurisdiction exists because the claims derive from a common nucleus of operative facts, and that diversity jurisdiction also exists, which although not plead in its amended complaint, the Court may infer on its own.[90]

For the reasons stated below, the Court recommends that Defendants' motion to dismiss for lack of admiralty jurisdiction regarding the Rule D "Petitory Action" be denied. In light of its findings on this issue, the Court declines to consider Defendants' request to dismiss under the Preferred Ship Mortgage Act.

//

---

[86] Doc. 76.
[87] *Id.* at 2.
[88] *Id.* at 7.
[89] *Id.* at 4.
[90] Doc. 82 at 10. *See Mir v. Fosburg*, 646 F.2d 342, 346-347 (9th Cir. 1980); *Merricks-Barragan v. Maidenform, Inc.*, 2011 WL 5173653 (C.D. Cal. Oct. 31, 2011).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 17 of 22

### i. Jurisdiction under Admiralty Rule D

Admiralty Rule D provides a basis to bring in federal court "all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel." In the Amended Complaint, Plaintiff states that this action has been brought "*in personam* arising from maritime contracts, as well as *in rem* against the Vessel for provision of necessaries and for petitory relief under Supplemental Admiralty Rule D."[91] A petitory suit seeks to try title to a vessel and "is to some extent akin to the terrestrial suit to quiet title, although, as opposed to a quiet title suit in which title is perfected against the world, the admiralty procedure to try title afforded by a petitory action can only be utilized with a specific adversary in mind."[92] A petitory action to try title under Rule D "requires [a] plaintiff to assert a legal title to the vessel; mere assertion of an equitable interest is insufficient."[93]

Plaintiff Liberty's Amended Complaint references petitory relief and goes on to specifically assert as a basis for federal jurisdiction CIMLA and Supplemental Rule C and D.[94] Defendants are correct that the Amended Complaint does not assert a right to title against the Vessel sufficient to support petitory relief. However, Defendants are incorrect that this is a basis upon which to grant their motion to dismiss.

What Defendants call a "petitory action" does not accurately state the substance of the allegation contained within the Amended Complaint. A reading of the Amended Complaint shows that Plaintiff Liberty is not seeking to try title to the Vessel. Rather, Plaintiff Liberty seeks to execute its lien rights, sell, or possess the

---

[91] Doc. 64 at 2.

[92] *Kawa Leasing, Ltd. V. Yacht Sequoia*, 544 F.Supp. 1050, 1063 (D. Md. July 9, 1982) (citing 7A Moore's Federal Practice P D.03, at D-25).

[93] *Gulf Coast Shell and Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010) (citing *Silver v. Sloop Silver Cloud*, 259 F.Supp. 187, 191 (S.D.N.Y. 1966).

[94] Doc. 64 at 2.

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 18 of 22

Vessel.[95]    As stated in its Amended Complaint and exhibits filed therewith, Defendants entered into a Loan and Security Agreement that gave Plaintiff Liberty a security interest in the Vessel.[96]  That agreement explicitly granted Plaintiff Liberty the right of "seizure and sale" of the Vessel if default occurred, and though disputed, Plaintiffs' Amended Complaint presents sufficient facts alleging Defendants defaulted under the agreement.[97]

Plaintiff Liberty's "legal claim to possession" of the Vessel is a proper basis under Rule D to proceed in an admiralty claim.[98] "It does not appear, either from Rule D or from other court opinions, that dispute of legal title is required for a Rule D possessory action. Rule D makes note both of actions for possession and of actions to quiet title."[99] Accordingly, Plaintiffs need only assert the right to possess the Vessel to maintain a Rule D action in federal court, which Plaintiff Liberty did in its Amended Complaint.[100]

---

[95] Doc. 64 at 9.

[96] Docs. 64 and 64-1.

[97] *See Gallagher v. Unenrolled Motor Vessel River Queen*, 475 F.2d 117 (5th Cir. 1973) (recognizing that suits for possession based on the claimant's right to title are properly within the admiralty jurisdiction of the federal judiciary (citing *Ward v. Peck*, 59 U.S. 267 (1855)).

[98] *Cary Marine, Inc. v. M/V Papillon*, 701 F.Supp. 604, 606 (N.D. Ohio 1988), aff'd, 872 F.2d 751 (6th Cir. 1989); *see also Newlin*, 623 F.Supp. at 1063.

[99] FED. R. CIV. P. SUPP. D; *Warhurst v. One Twenty Foot Bertran*, Civil Action No. 14-00245-N, 2015 U.S. Dist. LEXIS 31008, at *5-7 (S.D. Ala. Mar. 13, 2015); *see also The Tietjen & Lang No. 2*, 53 Supp. 459, 1944 A.M.C. 518 (D.N.J. 1944) (finding jurisdiction since "[p]ossessory actions are actions to recover ships or other property to which a party is of right entitled," which are analogous to suits for replevin).

[100] Doc. 82 at 7-8 FN 6; *see also Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F. 44, 47 (5th Cir. 1980) (jurisdiction is proper in a Rule D possessory suit where the Plaintiff alleges "ownership, right to immediate possession, [and] an unlawful … detention by defendant …"); *Ward v. Peck*, 59 U.S. 267, 267 (1855)*; Gallagher v. Unenrolled Motor Vessel River Queen*, 475 F.2d 117, 119 (5th Cir. 1973); *Matsuda v. Wada*, 128 F.Supp.2d 659 (D. Hawaii, 2000); *Ogner v. M/V KILOHANA, O.N. 1208577*, 2017 WL 5892196, at *2 (D. Hawaii, 2017); *Schatek v. Tsui*, 2010 WL 5169006, at *1 (E.D. Cal. Dec. 14, 2010); *Offshore Express, Inc. v. Begeron Boats, Inc.* 1978 A.M.C. 1504 (E.D. La 1977); *Hunt v. A Cargo of Petroleum Prods. Laden on the Steam Tanker Hilda*, 378 F. Supp. 701, 703-04 (E.D. Pa. 1974).

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 87   Filed 01/25/23   Page 19 of 22

Ultimately, whether Defendants defaulted or not is up to the trier of fact to decide, not this Court in the present motion to dismiss. Since this Court must assume Plaintiffs' proffered facts as true, Plaintiff Liberty has the right under Rule D to an action to determine possession in federal court and jurisdiction exists for the Court to hear those claims.

### ii. Additional Bases for Jurisdiction

Two additional bases of federal jurisdiction exist in this case - supplemental jurisdiction under 28 U.S.C. § 1367 and diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Court finds that supplemental jurisdiction is proper because Plaintiff Liberty's claims derive from the same nucleus of operative facts as Plaintiff AGS' maritime lien claims.[101] As stated in the Amended Complaint and accompanying exhibits, Plaintiff AGS entered into a Fishing Agreement with Defendants in 2019, whereby Defendants agreed to fish the Vessel for Plaintiff AGS for a 15-year term under certain terms and conditions. The Fishing Agreement was simultaneously made with the $800,000 rescue loan from Plaintiff Liberty, which also had a 15-year repayment term.[102] All of the loans by both companies involved the same debtors and the same vessel, and Liberty's claims can fairly be considered part of the same case or controversy as those presented by AGS.[103]

Additionally, diversity jurisdiction exists in this case. Plaintiffs concede that they did not plead diversity jurisdiction in their Amended Complaint.[104] However, this fact is not dispositive so long as sufficient facts are alleged upon which the Court may determine jurisdiction.[105] Federal Rule of Civil Procedure 12(h)(3) provides that a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time

---

[101] *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).
[102] Doc. 78 at 2.
[103] Doc. 82 at 9.
[104] Doc. 82 at 10.
[105] *See Mir v. Fosburg*, 646 F.2d at 346-347; *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).

during the pendency of the action."[106]   "[W]hile a complaint must present certain quite particular allegations of diversity jurisdiction in order to be adequate, the actual existence of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements."   The "essential elements of diversity jurisdiction" must be "affirmatively allege[d]," and "the burden of proving" diversity jurisdiction "is on the party asserting" it.

Plaintiffs have met their burden in this case.  Although Plaintiffs did not specifically allege diversity jurisdiction in their Amended Complaint, they did plead the essential elements of diversity jurisdiction for the Court to find that such jurisdiction exists.  As stated in the Amended Complaint, Plaintiff Liberty is a Washington company doing business in Washington, and Plaintiff AGS is a Delaware company doing business in Washington.  Defendants Bryan and Dana Howey are both citizens of Alaska, the Vessel is registered in Alaska, and Defendant AWE is incorporated in Alaska.  Finally, the jurisdictional threshold amount of over $75,000 is met for suit in federal court.  Accepting Plaintiffs' allegations as true, considering the facts alleged, and drawing all reasonable inferences in favor of Plaintiffs,[107] the Court finds that Plaintiffs' claims, on their face, sufficiently invoke federal diversity jurisdiction under the Rule 12(b)(1) standard.

### iii.  Motion to Dismiss Under Preferred Ship Mortgage Act at Docket 76

Plaintiffs do not specifically address whether there is jurisdiction under either 46 U.S.C. § 31322, and § 31325, Preferred Ship Mortgage Act. Since jurisdiction exists on multiple other grounds, the Court declines to consider this issue at this time.

//

//

---

[106] *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002); *see also Qingdao Youli Century Guarantee Co., Ltd. v. Shaoqiang Chen*, 2018 WL 6264971, at *1 (C.D. Cal., 2018).
[107] *See Safe Air*, 373 F.3d at 1039.

Order on 12(b)(1) Motions to Dismiss
*Kanaway Seafoods, Inc., et al. v. Pacific Predator, et al.*
Case 3:22-cv-00027-SLG-KFR   Document 82   Filed 01/25/23   Page 21 of 22

## V. Conclusion

Plaintiffs' Amended Complaint alleges sufficient facts to support federal jurisdiction over monies advanced by AGS to Plaintiffs for the acquisition of necessary limited entry permits. Similarly, admiralty jurisdiction exists as it relates to Plaintiff Liberty's action for possession of the Vessel pursuant to Supplemental Admiralty Rule D, as does supplemental and diversity jurisdiction. For the reasons stated above, the Court recommends that Defendants' Motions to Dismiss at Dockets 66 and 76 be **DENIED**.

DATED this 24th day of January, 2023 at Anchorage, Alaska.

*s/ Kyle F. Reardon*
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

### NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[108] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's order.[109]

A party may file written objections to the magistrate judge's order within fourteen (14) days.[110] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[111]

---

[108] 28 U.S.C. § 636(b)(1)(B).
[109] 28 U.S.C. § 636(b)(1)(C).
[110] *Id.*
[111] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).