# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

KANAWAY SEAFOODS, INC., et al.,

    Plaintiffs,

v.

PACIFIC PREDATOR, et al.,

    Defendants.

Case No. 3:22-cv-00027-SLG-KFR

**REPORT & RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT RE WRONGFUL ARREST COUNTERCLAIM**

Before the Court is a Motion for Summary Judgment re Defendants' Wrongful Arrest Counterclaim filed by Plaintiffs/Counterdefendants Kanaway Seafoods, Inc., doing business as Alaska General Seafoods ("AGS"), and Liberty Packing LLC ("Liberty").[1] Defendants/Counterplaintiffs Pacific Predator ("the Vessel"), Bryan Howey, Dana Howey, and Alaska Wild Exports LLC ("AWE") did not file a response to the Motion. Plaintiffs filed a notice of Defendants' non-opposition.[2] Defendants have offered no evidence creating a genuine issue of fact that AGS lacked a bona fide claim to a maritime lien on the Vessel or that AGS pursued the Vessel's arrest in bad faith, with malice, or with gross negligence. In addition, the Court has consistently found that AGS has met its burden to show that it had a valid maritime lien when it sought a warrant for the Vessel's arrest. Because Defendants' wrongful arrest counterclaim cannot be sustained, the Court recommends that the Motion be **GRANTED** and that First Cause of Action in Defendants' Countercomplaint **DISMISSED.**

//
//
//

---

[1] Docket 147. For the sake of simplicity, the Court will refer to these parties as "Plaintiffs."
[2] Docket 177. The Court will refer to these parties as "Defendants."

## I. BACKGROUND[3]

Starting in 2019, Defendants entered into a series of agreements with Plaintiffs. First, on April 17, 2019, the Howeys entered into a loan and security agreement with Liberty ("Liberty Loan Agreement"); the parties documented the $800,000 loan by a promissory note ("Liberty Note") reciting the loan's terms.[4] In exchange for this loan, the Howeys agreed to enter into a fishing agreement to deliver and sell seafood products to AGS for a fixed period.[5] Second, on June 30, 2019, Bryan Howey entered into a promissory note with AGS ("AGS Note") for a loan from AGS to Howey in the amount of $23,949.32.[6] And third, between 2019 and 2021, AGS loaned or advanced Bryan Howey and the Vessel—a 58-foot seiner that the Howeys used to commercially fish Alaskan waters—additional funds that were used to pay various expenses associated with Defendants' fishing operations.[7] These sums were added to an "open account" with AGS that was used to track ongoing debits and credits, including credits for Defendants' fish deliveries.[8]

On February 23, 2022, Plaintiffs filed a Complaint *in rem* and *in personam* against Defendants, alleging that Defendants had failed to pay amounts loaned under the Liberty Note, the AGS Note, and the AGS open account.[9] Plaintiffs' initial Complaint asserted several claims, including a claim by AGS for foreclosure of maritime lien rights.[10] Plaintiffs alleged that AGS had a maritime lien arising from loaning Defendants, pursuant to the AGS Note and open account, "funds to be used for the maintenance and operation of the [V]essel as necessaries."[11]

---

[3] The Court will not repeat additional background material set forth in previous Reports and Recommendations that is not relevant to the present Motion. *See, e.g.*, Docket 115; Docket 176; Docket 181.
[4] Docket 145-1; Docket 145-2.
[5] Docket 145-1 at 1; Docket 172-1.
[6] Docket 64-3.
[7] Docket 64 at 6–7, ¶ 3.13; Docket 75 at 9–10, ¶ 26.
[8] Docket 64-4; Docket 75 at 9, ¶ 26.
[9] Docket 1.
[10] *Id.* at 8–9, ¶¶ 4.6–4.7.
[11] *Id.*

R&R on MSJ re Wrongful Arrest Counterclaim  2
*Kanaway Seafoods, Inc. v. Pacific Predator*

On February 28, 2022, Plaintiffs moved for an order authorizing the issuance of a warrant for the Vessel's arrest.[12] On review of Plaintiffs' complaint and the attached exhibits, the Court granted this motion.[13] The U.S. Marshals Service arrested the Vessel on April 18, 2022.[14] Defendants then moved for a hearing to vacate the arrest and for Plaintiffs to present evidence justifying the arrest, including evidence supporting the existence of a maritime lien.[15] The Court granted the motion and held a hearing on May 3, 2022.[16] After the hearing, the parties filed briefing and Plaintiffs submitted evidence pertaining to the arrest.[17]

On July 29, 2022, the Court issued an order denying Defendants' request to vacate the arrest.[18] The Court found that AGS had met its burden of showing a "fair or reasonable probability that the conditions for foreclosure against a maritime lien . . . exist[ed]."[19] The Court explained that AGS had submitted evidence showing that it had loaned funds to Defendants that were used as necessaries for the Vessel, and that at least some of these loans remained unpaid.[20] Although Defendants objected to the veracity of some of this evidence, the Court noted that these objections were "not relevant to the limited purposes of [the motion]" because AGS had already established probable cause that it had a maritime lien on the Vessel.[21]

On September 7, 2022, Plaintiffs filed an Amended Complaint in which AGS reasserted its maritime lien foreclosure claim against Defendants.[22] Defendants answered the Amended Complaint and raised numerous counterclaims, including a counterclaim for wrongful arrest of

---

[12] Docket 3; *see also* Fed. R. Civ. P. Supp. R. C(3).
[13] Docket 7.
[14] Docket 10; Docket 11.
[15] Docket 15; *see also* Docket 16; Fed. R. Civ. P. Supp. R. E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.").
[16] Docket 21; Docket 28; Docket 49.
[17] Docket 29; Docket 30; Docket 31; Docket 32; Docket 33; Docket 40; Docket 41; Docket 42; Docket 43; Docket 47.
[18] Docket 52.
[19] *Id.* at 9.
[20] *Id.* at 10–12.
[21] *Id.* at 12.
[22] Docket 64 at 8–9, ¶¶ 4.6–4.7.

R&R on MSJ re Wrongful Arrest Counterclaim  3
*Kanaway Seafoods, Inc. v. Pacific Predator*

the Vessel.[23] In connection with their wrongful arrest counterclaim, Defendants allege that Plaintiffs "conspired to transfer funds between themselves in order to create the appearance that there was a balance due from [Defendants] on the AGS Open Account," so that Plaintiffs could assert a maritime lien and arrest the Vessel.[24]

In the present Motion, Plaintiffs seek summary judgment solely on Defendants' wrongful arrest counterclaim.[25]

## II. LEGAL STANDARDS

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [26] A fact is "material" if it might affect the outcome of the case under the governing law.[27] A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable factfinder to decide in favor of the nonmoving party.[28] In determining whether a genuine dispute of material fact exists, the court views the evidence in the light most favorable to the nonmoving party, and draws all reasonable inferences in favor of that party.[29]

The party moving for summary judgment bears the ultimate burden of persuasion and the initial burden of demonstrating the absence of a genuine issue of material fact.[30] Where the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."[31] To prevent summary judgment in these circumstances, the nonmoving party "must produce evidence to support its claim or defense."[32] It is not the task of the court to "scour the record in search of

---

[23] Docket 75 at 20–23, ¶¶ 73–84.
[24] *Id.* at 20–22, ¶¶ 74–81.
[25] Docket 147.
[26] Fed. R. Civ. P. 56(a).
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").
[28] *Id.* at 248.
[29] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).
[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[31] *Id.* at 325.
[32] *Nissan Fire & Marine Ins. V. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

R&R on MSJ re Wrongful Arrest Counterclaim 4
*Kanaway Seafoods, Inc. v. Pacific Predator*
Case 3:22-cv-00027-SLG-KFR   Document 194   Filed 08/16/24   Page 4 of 9

a genuine issue of triable fact."[33] Rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment."[34] "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."[35]

### III. DISCUSSION

Plaintiffs argue that they are entitled to summary judgment on Defendants' wrongful arrest counterclaim because Defendants cannot prove either of the two necessary elements of wrongful arrest: (1) that AGS lacked a bona fide maritime lien claim and (2) that the arrest was due to bad faith, malice, or gross negligence.[36] The Court agrees.

Title 46, United States Code, Section 31342(a) confers upon "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner" a maritime lien on the vessel, and permits that person to "bring a civil action *in rem* to enforce the lien."[37] "In general, maritime liens, including necessaries liens, exist to keep ships moving in commerce, while preventing them from sailing away from the debts they incur."[38] A vessel may be arrested to enforce a maritime lien. Upon such an arrest, the owner of the vessel is entitled to a hearing at which the arresting party must present evidence showing probable cause to believe that a maritime lien exists.[39] "The probable cause hearing is not intended to definitively resolve the dispute between the parties, but rather to make a preliminary

---

[33] *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted) (quoting *Richards v. Combined Ins.*, 55 F.3d 247, 251 (7th Cir. 1995)).
[34] *Id.* (quoting *Richards*, 55 F.3d at 251).
[35] *Nissan Fire & Marine Ins.*, 210 F.3d at 1102.
[36] Docket 147 at 8–9. In the alternative, Plaintiffs argue that summary judgment is appropriate because (1) the law of the case precludes Defendants' wrongful arrest counterclaim and (2) Liberty did not arrest the Vessel and thus cannot be liable for wrongful arrest. *Id.* at 8–10.
[37] *See also Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 919 (9th Cir. 2002) ("The theoretical basis for the maritime lien rests on the legal fiction that the ship itself caused the loss and may be called into court to make good. Maritime liens arise for the unpaid provision of necessaries . . . as well as in other circumstances.").
[38] *Id.*
[39] *See* Fed. R. Civ. P. Supp. R. C(3), E(4)(f); *Del Mar Seafoods Inc. v. Cohen*, No. C 07-02952-WHA, 2007 WL 2385114, at *3 (N.D. Cal. Aug. 17, 2007).

R&R on MSJ re Wrongful Arrest Counterclaim 5
*Kanaway Seafoods, Inc. v. Pacific Predator*
Case 3:22-cv-00027-SLG-KFR    Document 194    Filed 08/16/24    Page 5 of 9

determination of whether there were reasonable grounds for issuing the arrest warrant."[40]

To prove a claim for wrongful arrest of a vessel, the vessel owner must establish two elements: (1) the lack of a bona fide claim to a maritime lien on the vessel and (2) bad faith, malice, or gross negligence on the part of the arresting party.[41] A lien holder does not act in bad faith when there is "a bona fide dispute over the validity of [the] lien" and "the parties could have legitimately and honestly believed that the lien would stand up."[42]

Throughout the entirety of this case, the Court and the District Court have rejected Defendants' contentions that AGS did not have a valid maritime lien when it sought the Vessel's arrest.[43] First, in its order denying Defendants' motion to vacate the Vessel's arrest, the Court determined that Plaintiffs had met their burden of showing a reasonable probability that AGS had a maritime lien based on AGS's advancement of necessaries and Defendants' failure to satisfy at least some of those debts.[44] The Court recognized Defendants' objections to AGS's calculations of the outstanding debts but concluded that these objections did not affect the Court's probable cause determination.[45] Second, in a subsequent Report and Recommendation to deny two of Defendants' motions to dismiss, the Court concluded that there was "no basis to disturb [its] prior findings" regarding the existence of a maritime lien

---

[40] *Benicia Harbor Corp. v. M/V IDA LOUISE*, — F. Supp. 3d —, 2023 WL 7092230, at *2 (E.D. Cal. 2023).
[41] *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. Berhad*, 464 F. App'x 647, 648 (9th Cir. 2011) (citing *Stevens v. F/V Bonnie Doon*, 655 F.2d 206, 209 (9th Cir. 1981)); *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 574–75 (5th Cir. 2015).
[42] *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 475 (5th Cir. 1984); *see also Poppy Tex & Designs, Inc. v. Cont'l Logistic Serv., Inc.*, No. CV 20-3185-MWF (RAOx), 2021 WL 935514, at *2 (C.D. Cal. Jan. 12, 2021) ("A defendant's 'honest belief that it had a maritime lien over [a vessel or cargo] does not amount to bad faith, malice, or gross negligence, even if that belief turns out to be incorrect.'" (quoting *Chemoil Corp. v. M/V DARYA VISHNU,* No. C13-5494 RBL, 2013 WL 6328829, at *3 (W.D. Wash. Dec. 5, 2013))).
[43] Docket 52 at 9–12; Docket 87 at 12–13; Docket 110 at 3; Docket 115 at 8–9; Docket 143.
[44] Docket 52 at 9–12.
[45] *Id.* at 12; *see also Del Mar Seafoods*, 2007 WL 2385114, at *3 ("The purpose of [Supplemental Admiralty] Rule E(4)(f) . . . is not to resolve [ ] factual disputes, but rather to assess whether plaintiff's showing [of entitlement to a maritime lien] rises to the level of probable cause."); *SMS Yacht Maintenance v. One Nautique 210 Pleasure Vessel*, No. 12-CV-2038-IEG NLS, 2012 WL 6737197, at *1 (S.D. Cal. Dec. 28, 2012) ("On [a motion to vacate arrest], Plaintiff need only show entitlement to a maritime lien on the Vessel and need not resolve disputed facts as to its scope.").

R&R on MSJ re Wrongful Arrest Counterclaim 6
*Kanaway Seafoods, Inc. v. Pacific Predator*
Case 3:22-cv-00027-SLG-KFR    Document 194    Filed 08/16/24    Page 6 of 9

held by AGS against the Vessel.[46] In its order on this Report and Recommendation, the District Court "agree[d] that maritime jurisdiction is proper over AGS's claims because AGS's funds were advanced and used for necessaries for the [Vessel]."[47] And third, in a Report and Recommendation to deny Defendants' motion for summary judgment in this case, the Court declined to reconsider its and the District Court's prior rulings with respect to the maritime lien issue because Defendants had failed to offer any relevant new evidence or arguments.[48] The District Court adopted this Report and Recommendation in full.[49]

In light of these rulings and Defendants' failure to present evidence that creates a genuine issue of fact as to AGS's entitlement to a maritime lien or as to AGS's culpability, Defendants' wrongful arrest counterclaim is inviable. The fact that the Court has consistently upheld AGS's maritime lien on the Vessel is, at minimum, strong evidence of a bona fide claim to this lien.[50] Defendants have offered no evidence that could be construed as invalidating AGS's claim to a maritime lien. Defendants have similarly offered no evidence that would allow a reasonable factfinder to decide that AGS pursued the Vessel's arrest in bad faith, with malice, or with gross negligence. There is thus no basis to conclude that AGS lacked a bona fide claim to a lien on the Vessel or that AGS improperly pursued the Vessel's arrest.[51]

---

[46] Docket 87 at 12–13 ("In its Order Denying Motion to Vacate Arrest and Setting Bond, this Court previously analyzed the standards and elements required to determine that Plaintiffs adequately showed a fair or reasonable probability that it has a maritime lien against the Vessel and that, in accordance with the Rule of Advances, necessaries were advanced. There is no basis to disturb the Court's prior findings on this issue, nor its conclusion that the money advanced by AGS to Defendants was for the purpose of acquiring necessaries for the successful operation of the Vessel." (footnote omitted)).
[47] Docket 110 at 3 (internal quotation marks omitted).
[48] Docket 115 at 8–9.
[49] Docket 143.
[50] *Cf. Indus. Maritime Carriers, LLC v. Dantzler, Inc.*, 611 F. App'x 600, 607 (11th Cir. 2015) (observing that even in cases where "it turns out that [the arresting party] had the losing legal argument in the underlying dispute leading to the attachment," courts have not found the arresting party liable purely by virtue of the unlawful attachment (citing *Cent. Oil Co. v. M/V Lamma-Forest*, 821 F.2d 48, 51 (1st Cir. 1987); *Ocean Ship Supply, Lt. v. MV Leah*, 729 F.2d 971, 974 (4th Cir. 1984))); *Heck v. Humphrey*, 552 U.S. 477, 486–87 (1994) (holding that a state prisoner may not seek damages under 42 U.S.C. § 1983 where prisoner's conviction or sentence has not already been invalidated and where judgment in prisoner's favor "would necessarily imply the invalidity of his conviction or sentence").
[51] As the Court explained in its order granting in part and denying in part Plaintiffs' motion for summary judgment on certain of Defendants' other counterclaims, Defendants filed a declaration by Melissa

R&R on MSJ re Wrongful Arrest Counterclaim       7
*Kanaway Seafoods, Inc. v. Pacific Predator*
3:22-cv-00027-SLG-KFR
Case 3:22-cv-00027-SLG-KFR     Document 194     Filed 08/16/24     Page 7 of 9

Accordingly, the Court concludes that summary judgment in Plaintiffs' favor is appropriate.

## IV.   CONCLUSION

The Court finds that Defendants have failed to show that any genuine dispute of material fact exists as to whether AGS had a bona fide maritime lien claim against the Vessel, or as to whether the Vessel's arrest was due to bad faith, malice, or gross negligence. Plaintiffs are therefore entitled to summary judgment on Defendants' wrongful arrest counterclaim. Accordingly, the Court recommends that Plaintiffs' Motion for Summary Judgment re Defendants' Wrongful Arrest Counterclaim at Docket 147 be **GRANTED** and that the First Cause of Action in Defendants' Countercomplaint at Docket 75 be **DISMISSED**.

DATED this 16th day of August, 2024, at Anchorage, Alaska.

/s/ Kyle Reardon
KYLE REARDON
United States Magistrate Judge
District of Alaska

## NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[52]

---

Curran that is untimely for purposes of any of the pending motions for summary judgment in this case. *See* Docket 193 at 19–20; *see also* Docket 179. Nonetheless, even if the Court were to consider the Curran declaration as evidence with respect to the present Motion, Curran's testimony does not create a genuine dispute of material fact as to either element of Defendants' wrongful arrest counterclaim. The most relevant portion of Curran's declaration is her testimony that the August 31, 2019, transfer from AGS to Liberty was an "inaccurate or inappropriate recording of financial data" given that the transfer was dated a month before that year's due date for the Howeys' Liberty loan payment. Docket 179 at 12, ¶¶ 41–44. Curran explains that on another occasion, she "witnessed . . . Brad Wilkins change[] an entry in an account or report in order to make the books look more favorable." Docket 179 at 12–13, ¶ 45. But this testimony and all justifiable inferences drawn from it do not create a genuine dispute of material fact as to whether AGS had a bona fide maritime lien when it sought the Vessel's arrest or as to whether AGS sought the arrest in bad faith, with malice, or with gross negligence.

[52] 28 U.S.C. § 636(b)(1)(B).

R&R on MSJ re Wrongful Arrest Counterclaim                8
*Kanaway Seafoods, Inc. v. Pacific Predator*
Case 3:22-cv-00027-SLG-KFR   Document 194   Filed 08/16/24   Page 8 of 9

A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's order.[53]

A party may file written objections to the magistrate judge's order within 14 fourteen days.[54] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[55]

---

[53] *Id.* § 636(b)(1)(C).
[54] *Id.*
[55] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

R&R on MSJ re Wrongful Arrest Counterclaim 9
*Kanaway Seafoods, Inc. v. Pacific Predator*